[731 NYS2d 171]

In the Matter of JAIME V. DELIO (Admitted as JAIME VINCENT DELIO), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 18, 2001

**APPEARANCES OF COUNSEL**

*Mady J. Edelstein* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Michael L. Macklowitz* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Jaime V. Delio was admitted to the practice of law as Jaime Vincent Delio by the Second Judicial Department on April 22, 1987, and at all times relevant to this proceeding, maintained an office for the practice of law in the First Judicial Department.

Respondent was served with a notice and statement of charges on or about January 10, 2001, charging him with violating Code of Professional Responsibility DR 1-102 (a) (5) and (7) and DR 7-106 (c) (6) (22 NYCRR 1200.3, 1200.37). The charges arose out of respondent's conduct before Housing Court Judge Margaret Parisi McGowan on November 12, 1999 in Civil Court, Bronx County. This Court, by order dated January 5, 2001, appointed a Referee to conduct a hearing and report on the charges.

The facts herein are undisputed. Respondent's practice is primarily in real estate and he appears frequently in Housing Court, Bronx County. On November 12, 1999, at 10:30 A.M., Judge McGowan dismissed an action in which respondent represented petitioner-landlord. Respondent arrived in Judge McGowan's courtroom shortly thereafter and, after being informed of the dismissal, was permitted to approach the bench at 10:55 A.M.

Initially, respondent questioned the court's purpose in issuing defaults, and the following colloquy took place:

"THE COURT: Counselor, I don't have to explain why I have defaults.

"MR. DELIO: This is [inaudible] other than your own self interest—

"THE COURT: I've had enough, Counselor. Step back. Counselor—

"MR. DELIO: You're so pompous on the bench. It's ridiculous. You should remember what your jobs are.

"THE COURT: Counselor—

"MR. DELIO: I don't have to respect you if you're not—

"THE COURT: Have a seat, Counselor. Have a seat.

"MR. DELIO: You're wrong.

"THE COURT: Counselor, have a seat. I'm going to have a contempt hearing.

"MR. DELIO: It's wrong. She can't hold a contempt hearing. You have to call for one.

"THE COURT: Well, I will call for one."

Respondent thereafter moved to restore the case to the calendar approximately three days after his court appearance, and stated the following in an affirmation in support:

"In fact there is not one reason that I can think of that the Court was restrained to dismiss the proceeding at 10:30 A.M. other then [sic] its own self interest in keeping the docket clear * * * However if the resolution part [sic] only concern is the following of arbitrary rules they impose and then the Court defends these rules with pomposity and arrogance rather than logic or substantive meaning then there is no way to actually resolve anything. Bulling [sic] litigants with treats [sic] of irrational behavior is not justice or jurisprudence. The Court, when it suits its political temperament is quick to create standards that are unsupported in the law and are thereafter defended with it costs to [sic] much to appeal."

In a footnote, respondent added:

"The reason why someone is not where he should be is not the issue. Considering the large volume of cases most offices must maintain to make a living in this business it is amazing more cases are not missed. There will always be events such as this one for one reason or many. The point is how the Court will deal with these events. Like an ostrich sticking its head in the sand the option is always available to punt and dismiss the case. That is the easy part. What is hard sometimes is to do the right thing and remember facts like the person seeking relief is not the one who made the mistake and it is wrong to punish the petitioner for a procedural mistake. That is what the Court does here in these circumstances. Being so focused on the time of day the Court does not seem to have the time to provide any type of justice other than dismissal."

Respondent testified before the Referee that he apologized to Judge McGowan, albeit two months after the initial incident and approximately one month after he was served with the no-

tice and statement of charges. The record contains no testimony or statement from Judge McGowan regarding respondent's conduct, nor was a contempt proceeding initiated by the Judge.

The Referee, based upon the foregoing, sustained all three charges, finding that respondent: engaged in conduct that was prejudicial to the administration of justice, in violation of DR 1-102 (a) (5), when he disregarded the court's order and then, in public view, challenged the authority of the court; engaged in undignified and discourteous conduct which was degrading to a tribunal, in violation of DR 7-106 (c) (6); and engaged in conduct which adversely reflected on his fitness to practice law, in violation of DR 1-102 (a) (7), by acting in a manner which diminished his ability to represent his clients.

The Referee, in considering the sanction to be imposed, acknowledged that respondent did not have a disciplinary history, but nevertheless recommended a three-month suspension, relying on this Court's holding in *Matter of Dinhofer* (257 AD2d 326). In *Dinhofer*, the respondent, during a telephone status conference, characterized the judge's conduct as "blatantly corrupt" and as evincing "rampant corruption" (at 327 [internal quotation marks omitted]). A Hearing Panel subsequently convened and heard oral argument on April 4, 2001, and by a report dated April 25, 2001, recommended that the three charges be sustained, but that public censure was the appropriate sanction.

The Departmental Disciplinary Committee (the Committee) now seeks an order confirming the findings of fact and conclusions of law set forth in the Referee's report and the Hearing Panel's determination, and imposing whatever sanction this Court deems proper.

Initially, we note that the record fully supports the findings of misconduct against the respondent and that said conduct violated DR 1-102 (a) (5) and (7) and DR 7-106 (c) (6). Further, while respondent's behavior cannot be countenanced, we take heed of the fact that he expressed remorse for his conduct, apologized to the Judge, cooperated with the disciplinary proceedings, and had a previously unblemished disciplinary record. In view of the foregoing, we find public censure to be an appropriate sanction (*Matter of Golub*, 190 AD2d 110, 111).

Accordingly, the Committee's motion should be granted to the extent that the Panel's findings of fact and conclusions of law are confirmed and respondent publicly censured.

ROSENBERGER, J. P., NARDELLI, ELLERIN, WALLACH and RUBIN, JJ., concur.

Respondent publicly censured.