20-90010-am
In re Bank

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of May, two thousand twenty-one.

PRESENT:
> José A. Cabranes,
> Richard C. Wesley,
> > *Circuit Judges.\**

---

| | |
|---|---|
| In re Todd C. Bank, | 20-90010-am |
| Attorney. | ORDER OF GRIEVANCE PANEL |

---

This panel ordered Todd C. Bank to show cause why disciplinary or other corrective measures should not be imposed on him pursuant to Federal Rules of Appellate Procedure 46(b) and (c) and Second Circuit Local Rule 46.2, based on certain conduct described in our order (the "Show-Cause Order"). Bank timely responded to that order. Upon due consideration of the conduct discussed below and Bank's

---

**\*** Judge Robert D. Sack, the third member of this Court's Grievance Panel, has recused himself from this case. The two remaining members of the Grievance Panel, who are in agreement, have decided this case consistent with Second Circuit Internal Operating Procedure E(b). *See also* 28 U.S.C. § 46(d).

response to the Show-Cause Order (the "Response"), it is hereby **ORDERED** that Bank is **PUBLICLY REPRIMANDED** for his misconduct in this Court.

## I. *Doyle v. Palmer*, 19-939 (2d Cir.)

Bank was referred to the Grievance Panel by the panel that presided over *Doyle v. Palmer,* 19-939, in which Bank represented the appellant, Robert Doyle. During oral argument for that appeal, Bank responded to a judge's questions by twice asking "Are you serious, Judge?" and then commenting, "I see that you read the briefs thoroughly." Later, after being told that he had waived any reply, Bank disrupted the proceeding by failing to be seated, resulting in the panel asking a court security officer ("CSO") to escort him from the courtroom. After Bank was removed from the courtroom by the CSO, he failed to comply with the CSO's instruction to enter an elevator until the CSO escorted him to it.

In a post-argument letter to the *Doyle* panel, sent several days later, Bank stated, inter alia, that he should have been "more diplomatic" at the oral argument, that he understood the judge's umbrage at his comments, and that he failed to immediately comply with the CSO's request that he leave the courtroom because he had not heard the panel's instruction to that effect. The Court affirmed the district court's decision in *Doyle*, characterizing the claim brought by Bank as "specious." *Doyle v. Palmer*, 787 F. App'x 794, 795 (2d Cir. 2019).

In Bank's Response to the Show-Cause Order, he apologized for his conduct at the oral argument, which he conceded was "acrimonious and insulting," he expressed shock, shame, and embarrassment at his behavior, and he accepted responsibility for it. Response at ¶¶ 5-7.

## II. Additional Relevant Conduct

Bank also stated in his Response that he has "never been ordered by any bar, court, or disciplinary authority to address why [he] should not be disciplined, sanctioned, reprimanded, censured, or denied admission or readmission." Response at ¶ 4. However, other courts have imposed sanctions on him in response to motions for that relief filed by opposing parties.

First, the United States District Court for the Eastern District of New York sanctioned Bank for knowingly filing a time-barred complaint. *See McCabe v. Lifetime Entm't Servs., LLC*, 17-cv-908, 2018 WL 1521860 (E.D.N.Y. Jan. 4, 2018) (magistrate judge's recommendation that Bank be sanctioned), *recommendation adopted*, 17-cv-908, text order entered 3/26/2018 (E.D.N.Y. 2018), *aff'd*, 761 F. App'x 38 (2d Cir.), *cert. denied*, 140 S. Ct. 81 (2019). In his Response, Bank stated that, in filing the *McCabe* complaint and arguing that it was timely, he "relied in good faith upon a litigant's right to present substantively non-frivolous claims and arguments that are foreclosed by binding precedent in order to preserve them for appellate review." Response at ¶ 9. Bank did not mention that this Court explicitly rejected that argument when he appealed the district court's sanction order. *See McCabe*, 761 F. App'x at 41–42 (characterizing Banks's arguments to the district court as frivolous and rejecting contention "that his citations to older or abrogated cases provided persuasive authority that sufficed to justify his arguments as not frivolous"); *see also In re Payne*, 707 F.3d 195, 205 (2d Cir. 2013) (stating that this Court's local rules give the Grievance Panel "no more authority to revisit a prior panel's decisions than any other three-judge panel of this Court").

The Federal Circuit also has sanctioned Bank, both for bringing a frivolous appeal and for filing a frivolous motion for sanctions. *Bank v. Al Johnson's Swedish Restaurant & Butik, Inc.*, 795 F. App'x 822, 826–27 (Fed. Cir. 2019). In his Response, Bank stated that his argument before the Federal Circuit was made in good faith, Response ¶¶ 15-18, but did not suggest that he lacked a full opportunity to litigate the frivolousness issue in that court.[1]

## III.    Discussion

Bank's conduct during the oral argument in *Doyle v. Palmer*, 19-939, violated New York Rule of Professional Conduct 3.3(f)(2), which prohibits "a lawyer before a tribunal" from "engag[ing] in undignified or discourteous conduct"; it also constituted "conduct unbecoming a member of the bar"

---

[1] The Show-Cause Order also noted three other actions that were potentially relevant to the present proceeding. For present purposes, we conclude they are not relevant.

within the meaning of Federal Rule of Appellate Procedure 46(c). In his Response, Bank correctly characterized his conduct at the oral argument as "acrimonious and insulting," Response at ¶ 6, and the record does not suggest any justification for his discourtesy. Even if Bank believed that the judge's questions were unreasonable, which the record does not suggest, his obligation as a member of this Court's bar was to respond in a civil manner. "All persons involved in the judicial process—judges, litigants, witnesses, and court officers—owe a duty of courtesy to all other participants. The necessity for civility in the inherently contentious setting of the adversary process suggests that members of the bar cast criticisms of the system in a professional and civil tone." *In re Snyder*, 472 U.S. 634, 647 (1985). "Lawyers, as officers of the court, must always be alert to the rule that zealous advocacy [on] behalf of a client can never excuse contumacious or disrespectful conduct." *Van Iderstine Co. v. RGJ Contracting Co.*, 480 F.2d 454, 459 (2d Cir. 1973); *accord* N.Y. Rule of Professional Conduct 3.3, Comment 13.

Bank suggested in his post-argument letter to the *Doyle* panel that his conduct should be viewed in the light of prior poor treatment he has received from judges of this Court, whom he did not identify. *Doyle*, 19-939, doc. 54 at 4. To the extent Bank intended this as a defense, we reject it. The record does not reflect that the judges presiding over the oral argument did anything that warranted Bank's disrespectful responses or support the suggestion that prior conduct by other judges somehow justified that conduct. There also was no justification for exposing the other people present in the courtroom to that conduct.

We view Bank's failure to be seated upon being told he had waived rebuttal to be a continuation of his discourteous conduct. Bank appears to suggest that he remained standing only to ask that the panel's decision be published. Nonetheless, it was an unwarranted disruption, although it may not have been noteworthy had it not followed his discourteous words during his oral argument.

However, we conclude that Bank did not knowingly disrupt proceedings before the panel by refusing to leave the courtroom. Bank's assertion that he did not hear a directive from the bench requiring him to leave is supported by the oral argument transcript. Regarding Bank's interaction with the CSO outside the courtroom—which Bank characterized as "a brief misunderstanding regarding the process of

4

[his] leaving the courthouse," Response at ¶ 7—we decline to inquire further, or to rely on that interaction, since the alleged conduct would not alter any conclusion we reach in this matter, making any adversarial fact-finding an unnecessary burden on all concerned.

There are at least two significant aggravating factors: Bank has been an attorney since 1997, *see In re DeMell*, 589 F.3d 569, 573 (2d Cir. 2009) (concluding that attorney's "many years of experience is an aggravating factor"); ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") § 9.22(i) (1986, amended 1992) (listing "substantial experience in the practice of law" as an aggravating factor), and his discourtesy was public and in the presence of the judge he insulted, *see In re Teague*, 131 A.D.3d 268, 271 (1st Dep't 2015) (noting that attorney's disrespectful comments to two judges had occurred in open court). While Bank's presentation of frivolous claims or arguments in *Doyle*, *McCabe*, and *Bank* could be considered a "pattern of misconduct," ABA Standards § 9.22(c) (listing "pattern of misconduct" as an aggravating factor), we treat it as a minor aggravating factor since the number of instances is limited and we believe that Bank, from a subjective perspective, did not act in bad faith.

There also are mitigating factors. First, we are not aware of any other discourteous conduct by Bank covered by the Rules of Professional Conduct and he has not previously been disciplined by any bar. However, as noted above, Bank has been sanctioned and criticized by other courts. *See* ABA Standards §§ 9.22(a), 9.32(a) (listing prior disciplinary record, or lack thereof, as an aggravating or mitigating factor).

Second, and more important, in his Response to our Show-Cause Order, Bank accepted responsibility and expressed remorse, shame, and profound sorrow for his conduct at the *Doyle* oral argument, which he described as an aberration. *See* ABA Standards § 9.33(1) (listing remorse as a mitigating factor). While Bank's post-argument letter to the *Doyle* panel may not have much mitigation value, we accept Bank's later expression of contrition in his Response. It is our hope that the Response, having been written after a longer period of reflection than the post-argument letter, accurately reflects Bank's final understanding of his conduct and his intention to avoid such conduct in the future.

Upon due consideration of the conduct discussed above, Bank's Response, and the various mitigating and aggravating factors, we conclude that a public reprimand is warranted.[2]   However, Bank is advised that repetition of the conduct discussed above will not be tolerated and may result in his suspension from the bar of this Court or other corrective measures, such as being barred from presenting oral argument to this Court.   *See Ross v. Liberty Mut. Ins. Co.*, 172 F. App'x 346, 347 (2d Cir. 2006) (noting that "[l]itigants before [this Court] have no right to oral argument"); 2d Cir. R. 34.1(b) ("The court may determine to take a case on submission, without oral argument, in accordance with FRAP 34(a)(2).").

## IV.  Ancillary Matters

In addition to providing his Response to the Show-Cause Order, Bank also has moved for the Court to identify, and provide him with, "all non-public material upon which the Order to Show Cause relied" and to append a copy of his Response to this decision.   Bank's motion is granted in part.

As noted above, this proceeding was commenced upon receipt of a referral from the *Doyle* panel. We "relied" on the referral as the basis for commencing this proceeding, but did not rely on it in reaching this decision, which is based on our independent analysis of the facts and law.   Referrals to the Grievance Panel from other panels of the Court generally come in two forms: referrals appearing in orders of a panel and referrals made in non-public communications.   A referral appearing in an order can be challenged by filing a motion with the panel that issued the order, requesting that the panel reconsider the referral, or by

---

[2] *See In re Hayes*, 7 A.D.3d 108, 109 (1st Dep't 2004) (public censure where attorney "accused the court and its clerk of prejudice and racism, . . . made other insolent, disrespectful remarks," and had two prior admonitions, one for very similar misconduct); *In re Delio*, 290 A.D.2d 61, 62–64 (1st Dep't 2001) (public censure where attorney engaged in disparaging and discourteous conduct toward judge in court and a subsequent pleading, but expressed remorse, apologized, and had no disciplinary record); *In re Golub*, 190 A.D.2d 110, 111 (1st Dep't 1993) (public censure where attorney made "reckless statements to the press concerning [a judge], which were unprofessional, undignified, discourteous and degrading to the judge and the court," but attorney personally apologized to judge and had no prior disciplinary record); *but see Teague*, 131 A.D.3d at 271 (three-month suspension for "ongoing and public inappropriate behavior," where attorney showed "inexcusable disrespect in open court to two Administrative Law Judges," "spewed racist, sexist, homophobic and offensive epithets against other attorneys," and repeatedly requested clerks to violate tribunal's policy); *In re Dinhofer*, 257 A.D.2d 326, 327 (1st Dep't 1999) (three-month suspension for calling a judge "corrupt" during telephone status conference, with no prior disciplinary record).

employing the other regular appellate procedures. *See, e.g.*, Fed. R. App. P. 27, 40 (governing motion practice and petitions for rehearing). By contrast, litigants and the public generally have no right of access to internal court communications. *See Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994) ("The inner workings of administrative decision making processes are almost never subject to discovery .... Clearly, the inner workings of decision making by courts are kept in even greater confidence."); *see also United States v. Casas*, 376 F.3d 20, 21–23 (1st Cir. 2004) (holding that internal court memoranda written by district judge were confidential, not subject to Freedom of Information Act, and not part of the record); *In re Certain Complaints Under Investigation*, 783 F.2d 1488, 1520 (11th Cir. 1986) (holding that confidential communications among judges and their staffs are protected by a qualified privilege), superseded by statute on other grounds as stated in *In re McBryde*, 120 F.3d 519, 524 (5th Cir. 1997). In the present circumstances, the request for production of the referral communication should be made to the *Doyle* panel.

Bank's request that his Response be appended to this decision is denied. However, the Clerk of Court is authorized to provide public access to that document through regular Clerk's Office procedures and Bank himself is free to provide copies to members of the public.

The Clerk of Court is directed to release this decision to the public by posting it on this Court's website and providing copies to the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Bank, the disciplinary committee for the New York State Appellate Division, Second Department, and all other courts and jurisdictions to which this Court distributes disciplinary

7

decisions in the ordinary course.[3]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Counsel to this panel is authorized to provide to other courts and attorney disciplinary authorities, upon their request, all documents from the record of this proceeding. While we request that all non-public documents in the record remain confidential to the extent circumstances allow, we of course leave to the discretion of those courts and disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.